UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IDA BUONANNO,
    Plaintiff,

v.                        C.A. No. 16-cv-251-M-LDA

NANCY BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,[1]
    Defendant.

## ORDER

Plaintiff Ida Buonanno is in her 60's and previously worked as a products assembler and city clerk for 32 continuous years. Ms. Buonanno seeks judicial review of the final administrative decision of the Commissioner of Social Security denying her claim for Social Security Disability Insurance Benefits. The Administrative Law Judge ("ALJ") determined at step 2 of the sequential evaluation process that, while Ms. Buonanno had medically determinable impairments by way of back and hand pain, hypertension, major depressive disorder, and generalized anxiety disorder, none of these impairments, singularly or in combination, were "severe impairments" qualifying her for benefits. The Appeals Council denied review, and Ms. Buonanno now appeals to this Court for relief. Because this Court finds that the ALJ erred in

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substituted Nancy A. Berryhill for the Commissioner of Social Security as the defendant in this action.

failing to develop the record, the Court reverses the ALJ's ruling and remands for further consideration.

I. FACTS

Ms. Buonanno completed high school in Italy. Tr. at 26–27. She had worked as an assembler for twenty-five years, and then in the City of Providence Clerk's office. Tr. at 27–28. She took care of her sick husband until his death three years prior. Tr. at 38. Her husband had been verbally and physically abusive to her. Tr. at 39.

Beginning in 2008, Ms. Buonanno could no longer work because of back pain and mental health issues. Tr. at 35. In January 2009, Ms. Buonanno, after complaining of weakness and fatigue, chest pains, and right arm numbness, treated with Stephen M. Scott, M.D., an internist. Tr. at 262. Dr. Scott diagnosed Ms. Buonanno with anxiety disorder. *Id.* She latter presented to Dr. Scott with constant low back pain. Tr. at 260. Dr. Scott prescribed Flexeril and Tramadol and sent her for x-rays of her lumbosacral spine, which showed narrowing of the posterior aspect of the disc space between L5 and SI, indicating early degenerative arthritis. Tr. at 260, 264. Ms. Buonanno returned to Dr. Scott in 2010 because of depression and physical and verbal abusive from her husband. Tr. at 258. He noted that Ms. Buonanno had "left for weeks but returned as she has no money." *Id.* Dr. Scott also noted that Ms. Buonanno's "depression was getting worse" and that she was "ill-appearing," and therefore he diagnosed her with generalized anxiety and major depressive disorder. *Id.* Ms. Buonanno again presented to Dr. Scott feeling depressed

2

with some suicidal thoughts. Tr. at 256. She demonstrated a flat affect and reported that she was worried about violence from her spouse. *Id.* Dr. Scott again diagnosed Ms. Buonanno with generalized anxiety and major depressive disorder. *Id.*

Ms. Buonanno then saw Walter A. Hollinger, M.D., an internist at St. Joseph's Health Services, in November 2013 and again in July 2014, explaining she had increased depression, headache, dizziness, and decreased appetite. Tr. at 317–24. She reported not getting much effect from one of her medications—Citalopram. Tr. at 318. She was experiencing insomnia and not getting the full effect from the medication Fluoxetine for her depression. Tr. at 322.

In the fall of 2014, Ms. Buonanno went to Giulio G. Diamante, M.D., an ophthalmologist, reporting progressive blurred vision in both eyes. Tr. at 332, 335. On examination, Dr. Diamante found that Ms. Buonanno had blepharitis, inferior corneal thinning consistent with keratoconus, and cataracts in both eyes. *Id.* Dr. Diamante noted she might have lenticular astigmatism, reducing her net perception of astigmatism in each eye. *Id.* He also noted that, with standard cataract surgery, her astigmatism might be more pronounced. Tr. at 335.

At the January 2015 ALJ hearing, Ms. Buonanno testified that she was depressed and always stayed home. Tr. at 31–32. She had memory problems, difficulty concentrating, and felt worthless. Tr. at 32. She would break up tasks into smaller tasks in order to complete them. Tr. at 41. Ms. Buonanno testified that her friends helped her with household chores. Tr. at 40. She can sit, stand, and walk for twenty minutes at a time. Tr. at 32. She sleeps only one to two hours a night, despite

3

taking medication. Tr. at 33. Ms. Buonanno sometimes went to dinner or shopping with friends but did not really go out socially much. Tr. at 35.

Ms. Buonanno stopped going to treatment because she lost her health insurance after she left work due to her disability. Tr. at 39–40.

State medical expert John Pella, M.D., after reviewing the evidence, testified as follows:

> This is a somewhat limited record medically. [Prior to the date last insured,] the claimant had systemic hypertension requiring treatment but no end organ damage. References to low back pain in April of [2009]. She did have plane [sic] films of the lumbosacral spine which revealed mild degenerative disc disease at L5 and S1. No more detailed studies such as MRI and [there is] little descriptive [sic] with regard to any neurological complaints or impairment. References to general anxiety disorder, a depressive disorder as well, on treatment. Borderline obesity through that period. BMI value anywhere from 27 to 33. No basis for the complaints of sciatica in the record. No basis for complaint of the arm pain in the record. No basis for the cognitive effects in the record. She has one episode of atypical chest pain not pursued. And the recent record suggests vision problems which may extend back into that period but are not – we have no examination at that period to . . . make that determination.

Tr. at 43–44.

In addition, a Vocational Expert testified that Ms. Buonanno's past work as a small product assembler was light and unskilled, and her work as a clerk was light and semi-skilled. Tr. at 45.

The ALJ denied Ms. Buonanno's claim at the second step of the evaluation process, finding that she does not have a severe disability. In large part, the ALJ relied on medical expert John Pella, M.D. The ALJ found:

> Medical Expert, John Pella, M.D. reviewed the evidence of record and testified at the hearing. Dr. Pella stated the record is limited medically.

4

> Dr. Pella found that the claimant has hypertension that required treatment and there was no organ damage. Dr. Pella indicated that there are references to low back pain in April 2009 and she had plain films for the lumbar spine that revealed mild degenerative disc at L5-S1. More detailed exams like MRI, were not performed. The claimant had no neurological complaints. Dr. Pella stated that there are references to generalized anxiety disorder and a depressive disorder. The record indicated that the claimant was borderline obese with a body mass index ranging from 27-33. Dr. Pella found no basis for the complaint of pain in the records. There was no basis for cognitive affects in the record. Claimant complained of chest pain, but that condition as not pursued. Dr. Pella noted that the claimant had vision problems that may extend back into that period, but there were no exams to make that determination. Upon cross-examination, Dr. Pella stated a cervical MRI would have bene beneficial to determine if there was an issue with her arm pain.
>
> * * * *
>
> Based on the foregoing, the [ALJ] finds that the claimant's allegations of disability are not supported by the evidence of record.

Tr. at 16.

The ALJ went on to find that Ms. Buonanno's "allegations of disability are not supported by the evidence of record." Tr. at 16. He found that the earlier x-rays of Ms. Buonanno's back only indicated "mild degenerative disc disease." *Id.* As to the lack of treatment, the ALJ wrote:

> While the [ALJ] is aware that the claimant had insurance and financial difficulties, the evidence of record does not show that she sought free care or emergent care, suggesting that her impairments are not as severe as alleged.

*Id.* In reaching the non-disabled ruling, the ALJ afforded the "greatest weight to Dr. Pella's opinions and testimony." Tr. at 17. In addition, he gave "some weight" to the opinions of the non-examining consultants. *Id.*

5

## II. STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. Although questions of law are reviewed de novo, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g.) The term "substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court, in determining whether substantial evidence exists, must evaluate the record as a whole. *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). In reviewing the record, the reviewing court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. *See Colon v. Sec'y of Health & Human Servs.*, 877 F.2d 148, 153 (1st Cir.1989). The resolution of conflicts in the evidence is for the Commissioner, not the courts. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981) (citing *Richardson*, 402 U.S. at 399).

## III. ANALYSIS

An ALJ must follow five well-known steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. Here, the ALJ denied Ms. Buonanno's disability claim at Step 2 of the evaluation process. Step 2 states that, if a claimant does not have any impairment or combination of impairments, which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe

impairment and is not disabled. 20 C.F.R. § 404.1520(c). The standard at step 2 of the sequential evaluation process is a "*de minimis*" one designed to weed out only the most minor of impairments. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1122 (1st Cir. 1986). Pursuant to 20 C.F.R. § 404.1523, the Commissioner "will consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Moreover, an impairment can only be considered "not severe" if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. SSR 96-3p ("If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process . . . .").

In considering whether a claimant's physical and mental impairments are severe enough to qualify for disability, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).

In making these determinations, "it is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be 'liberally applied.'" *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 531 (6th Cir. 1992) (quoting *Marcus v. Califano*, 615 F.2d 23, 29 (2d Cir. 1979)). "[T]he Social Security Act should be

7

construed liberally in order to further its remedial purposes." *Slessinger v. Sec'y of Health & Human Servs.*, 835 F.2d 937, 943 (1st Cir. 1987) (citing *Cunningham v. Harris*, 658 F.2d 239, 243 (4th Cir. 1981)). *See also Smirga v. Sec'y of Health & Human Servs.*, 607 F. Supp. 680, 685 (W.D. Pa. 1985) ("Where evidence has been presented and the case is close as it involves the application of the Social Security Act, the balance should be cast in favor of, rather than against, coverage in order to fulfill the statute's broad and beneficent objects.").

Ms. Buonanno challenges the ALJ's denial of her claim at Step 2, and in doing so, raises three errors: (1) the record has gaps that the ALJ failed to fill, (2) the record does not support a not severe finding,[2] and (3) the ALJ failed to account for her work history when he evaluated her credibility.

A. Gaps in the Record

Ms. Buonanno first argues that the record contained gaps and that the ALJ failed to fill those gaps. As stated in the ALJ's decision, Ms. Buonanno lost her health insurance in 2009 and, as a result, stopped seeing doctors. Tr. at 15. This resulted in a limited medical record, according to the medical expert called to testify. Tr. at 43.

The medical expert, John Pella, M.D., testified that the medical record is "somewhat limited." Tr. at 43. And when asked what types of testing would have been done if Ms. Buonanno's ability to pay was not an issue, Dr. Pella testified that

---

[2] Because the Court remands the case for further development of the record, the Court does not address whether the record was insufficient to find Ms. Buonanno's disability not severe.

an MRI of the lumbar spine, a cervical MRI, and a neurological examination would be expected. Tr. at 44. Ms. Buonanno's counsel followed up and asked if those tests would be beneficial to Ms. Buonanno's case, but the ALJ interjected, reasoning that, because the date of testing would be past the date of last insured, the results would not be helpful or indicative of her impairments while she was insured. Tr. at 44–45.

In addition to the medical expert's testimony, the record also contains opinions of two non-examining consultants for the state. The first state medical consultant concluded that there is insufficient medical evidence to conclude that Ms. Buonanno is disabled. Tr. at 77–79. The report indicated that Ms. Buonanno had an x-ray in 2009, which revealed early degenerative arthritis, and that her physician treated her for a lumbar strain. Tr. at 75. The medical consultant, however, stated that there is "[i]nsufficient evidence to evaluate without CE or current record." *Id.*

The second medical consultant, likewise, found the record insufficient to establish a severe disability. Tr. at 83–84. This medical consultant also highlighted the fact that Ms. Buonanno had a responsibility to produce evidence in support of her claim and that she failed to respond to requests for additional evidence. Tr. at 85.

In the ALJ's Decision, he acknowledged Dr. Pella's testimony that the record was "limited medically." Tr. at 15. He also acknowledged that Dr. Pella indicated that more exams, such as an MRI, would be beneficial in evaluating Ms. Buonanno's alleged disabilities. Tr. at 15–16. The ALJ concluded, however, that an MRI would not relate back to the last insured date. Tr. at 16. This is improper. An ALJ faced with a gap in the record cannot simply ignore that gap, even when filling the gap may

9

not be a quick fix. If a question presented as to the date of onset, the ALJ may infer the onset date based on the relevant evidence, *Fischer v. Colvin*, 831 F.3d 31, 35 (1st Cir. 2016), or call a medical advisor to testify as to the date of disability, *see* SSR 83-20 ("[T]he administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.").

The ALJ also relied on the two medical consultants' opinions, which opined that Ms. Buonanno's disability was not severe. Tr. at 16. These medical consultants, however, grounded their non-severe finding on the gaps in the record. Tr. at 77–79; Tr. at 83–84. In sum, the medical expert and the two consultative opinions relied upon the lack of medical records to conclude that Ms. Buonanno's disability was not severe. And the ALJ relied upon those opinions to close the evidentiary gap and conclude that Ms. Buonanno's disability was not severe. This circular logic did not discharge the ALJ's investigative duty and prejudiced Ms. Buonanno's claim.

Because the Court finds that "further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing," *Heggarty v. Sullivan*, 947 F.2d 990, 997 (1st Cir. 1991) (quoting *Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 139 (1st Cir. 1987)), the Court remands the case to the ALJ for further consideration.

B. Credibility Determination

Ms. Buonanno also challenges the ALJ's credibility determination, faulting the ALJ with failing to give weight to her long thirty-two-year work record. In light of

this Court's decision to remand, the ALJ is to make a new credibility determination specifically considering this factor after he develops the record.

IV. CONCLUSION

For the forgoing reasons, Ms. Buonanno's Motion for Remand (EFC No. 10) is GRANTED. The Commissioner's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 13) is DENIED. This Court REVERSES the decision of the Commissioner and REMANDS for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ John J. McConnell, Jr.
John J. McConnell, Jr.
United States District Judge

April 28, 2017